IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEE R. MARSHALL,

        Plaintiff,                No. CIV S-06-1884 GGH

       vs.

MICHAEL J. ASTRUE,          <u>ORDER</u>
Commissioner of
Social Security,

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is granted, the Commissioner's Motion for Summary Judgment is denied, and this matter is remanded pursuant to Sentence Four of 42 U.S.C. § 405(g), to the ALJ for further findings as directed in this opinion. The Clerk is directed to enter judgment for plaintiff.

<u>BACKGROUND</u>

        Plaintiff, born November 1, 1946, applied for disability benefits on April 7 and 20, 2004. (Tr. at 49, 301.) Plaintiff alleged he was unable to work since March 5, 2003, due to chronic obstructive pulmonary disease ("COPD"), emphysema, back problems, and hypertension.

(Tr. at 17, 301.)  In a decision dated December 16, 2005, ALJ Mark Ramsey determined that

plaintiff was not disabled.[1]  The ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2003.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b) and 416.920(b).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

\\\\\

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    5.    The undersigned finds the claimant's allegations regarding
2          his limitations are not totally credible for the reasons set
          forth in the body of the decision.

3    6.    The undersigned has carefully considered all of the medical
          opinions in the record regarding the severity of the
4          claimant's impairments (20 CFR §§ 404.1527 and
          416.927).

5

6    7.    The claimant has the following residual functional capacity:
          lift/carry 20 pounds occasionally and ten pounds frequently,
          sit stand or walk six of eight hours, and avoid concentrated
7          exposure to environmental irritants.

8    8.    The claimant's past relevant work as casino dealer did not
          require the performance of work-related activities
9          precluded by his residual functional capacity (20 CFR §§
          404.1565 and 416.965).

10

11    9.    The claimant's medically determinable impairments do not
          prevent the claimant from performing his past relevant
          work.

12

13    10.   The claimant was not under a "disability" as defined in the
          Social Security Act, at any time through the date of the
          decision (20 CFR §§ 404.1520(e) and 416.920(e)).

14

15    (Tr. at 22-23.)

16    ISSUES PRESENTED

17          Plaintiff has raised the following issues: (A) Whether the ALJ Failed to Grant

18    Appropriate Weight to the Opinion of Plaintiff's Treating Source; and (B) Whether the ALJ

19    Provided a Faulty Assessment of Plaintiff's Ability to Perform Past Relevant Work.

20    LEGAL STANDARDS

21          The court reviews the Commissioner's decision to determine whether (1) it is

22    based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

23    the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

24    Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

25    Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

26    accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

3

1420 (1971), quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229, 59 S. Ct. 206

(1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving ambiguities."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir.

2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

<u>Thomas v. Barnhart</u>, 278  F.3d 947, 954 (9th Cir. 2002).

<u>ANALYSIS</u>

     A.  <u>Whether the ALJ Erred in Rejecting the Opinion of Plaintiff's Treating Physician</u>

       Plaintiff claims that the ALJ erred in rejecting the treating opinion of Dr. Hagar in

favor of non-examining medical consultants.

       The weight given to medical opinions depends in part on whether they are

proffered by treating, examining, or non-examining professionals.  <u>Holohan v. Massanari</u>, 246

F.3d 1195, 1201 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).[2]  Ordinarily,

more weight is given to the opinion of a treating professional, who has a greater opportunity to

know and observe the patient as an individual.  <u>Id</u>.; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th

Cir. 1996).

       To evaluate whether an ALJ properly rejected a medical opinion, in addition to

considering its source, the court considers whether (1) contradictory opinions are in the record;

and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

a treating or examining medical professional only for *"clear and convincing"* reasons.  <u>Lester</u> ,

81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

---

[2]  The regulations differentiate between opinions from "acceptable medical sources" and "other sources."  <u>See</u> 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources."  <u>Id.</u>  Medical opinions from "acceptable medical sources," have the same status when assessing weight.  <u>See</u> 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions from "other sources."  Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

1   be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

2   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

3   examining professional's opinion (supported by different independent clinical findings), the ALJ

4   may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

5   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

6   weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

7    2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and

8   supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

9   (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

10  881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

11  insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

12          In this case, the ALJ gave greater weight to the opinions of the state agency

13  physician and Dr. Natali in finding that plaintiff could do light work without concentrated

14  exposure to environmental irritants, due to his COPD and back pain.  (Tr. at 20.)  The ALJ gave

15  little weight to Dr. Hagar's opinion which he noted imposed extensive limitations.  He stated:

16  "Dr. Hagar's own treating records from Westwood Clinic show the claimant has intermittent

17  exacerbations of his COPD/chronic bronchitis that respond to treatment and that, in general, his

18  COPD is doing well.  In addition, the records note the claimant is working as a firewood cutter."

19  (Id. at 21.)

20          Although the ALJ gave some reasons to reject the treating physician, it is apparent

21  that he drew every possible inference in favor of non-disability.  The remainder of the record is

22  not sufficiently developed to arrive at this conclusion.  Dr. Hagar's most recent treating records,

23  although showing that plaintiff responded to treatment and was doing well, continued to show

24

---

25      [3] The factors include: (1) length of the treatment relationship; (2) frequency of
    examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26  (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1  that plaintiff required breathing treatments in office, indicating poorly controlled COPD which

2  Dr. Hagar noted was chronic.  (Tr. at 279, 284, 289, 290, 291.)  Thus, plaintiff's improvements

3  were episodic, and the ALJ's interpretation of these records is not entirely accurate, especially in

4  light of Dr. Hagar's functional capacity assessment.

5          Dr. Hagar completed a pulmonary residual functional capacity questionnaire on

6  March 2, 2005.  She found that plaintiff could only walk a quarter of a block before he had to

7  rest, could sit or stand for only twenty minutes continuously, and could sit and stand/walk for less

8  than two hours in an eight hour day.  (Tr. at 237-38.)  Plaintiff would need to take unscheduled

9  breaks every twenty minutes during an eight hour day, of five to ten minutes in length, and would

10 need to recline during this time.  Plaintiff could only lift less then ten pounds occasionally.  (Id.

11 at 238.)  Plaintiff was to avoid concentrated exposure to extreme cold and heat and perfumes.  He

12 should avoid even moderate exposure to soldering fluxes, solvents/cleaners, chemicals, and other

13 irritants.  He was to avoid all exposure to fumes, odors, gases, dusts, and cigarette smoke.  Dr.

14 Hagar predicted plaintiff would be absent due to illness more than four times per month.  (Id. at

15 239.)  This treating physician thought plaintiff's COPD was not likely to improve over time.  (Id.

16 at 237.)  Dr. Hagar added that due to plaintiff's back pain, his ability to lift, carry and bend was

17 affected.  (Id. at 240.)

18          A review of the other medical records indicates that there is either not sufficient

19 development of the record, and that what is in the record is consistent with Dr. Hagar's opinion.

20          Dr. Natali was a consultant who saw plaintiff one time, on August 4, 2004.  His

21 only record is a pulmonary RFC questionnaire.  He did not complete most of the questionnaire,

22 writing that the "above answers are as complete as my contacts allow."  (Tr. at 205.)  Like Dr.

23 Hagar, he thought plaintiff would need unscheduled breaks, and that he should avoid

24 concentrated exposure to extreme heat, fumes, odors, dusts, gases, cigarette smoke, soldering

25 fluxes, solvents/cleaners, and chemicals.  (Tr. at 203, 204.)  He thought plaintiff's prognosis was

26 fair, and that he was not a malingerer.  (Id. at 202, 201.)  His failure to complete the remainder of

6

1  the questionnaire, however, is significant in showing the lack of a complete assessment.  (Id. at

2  200-05.)

3          The other opinion relied on by the ALJ is that of the state agency physician.  (Id.

4  at 20.)  Based on a review of the records, this doctor found plaintiff could do light work with the

5  following restrictions: occasional climbing, balancing, stooping, kneeling, crouching and

6  crawling, unlimited exposure to extreme heat and cold, wetness, humidity, noise, vibration, and

7  other hazards, and avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation,

8  etc.  Next to this last category, he wrote, "average cleanliness."  (Id. at 215-18.)

9          The most recent opinion in the record is dated April 22, 2005, and states that

10  plaintiff can only do sedentary jobs.  (Tr. at 297.)  It also states that plaintiff started smoking

11  again two months earlier and was not interested in participating in a smoking cessation program.

12  (Id. at 298.)  These records are not inconsistent with Dr. Hagar's residual functional capacity

13  evaluation, and tend to show the ALJ's reasons for rejecting this doctor's opinion are not based

14  on the record.

15          As to the ALJ's second reason for rejecting Dr. Hagar's opinion, there is evidence

16  that plaintiff was working as a firewood cutter, but it is not clear how substantial this activity

17  was.  See id. at 176, 177 (after picking up couple logs, plaintiff must sit down), 183.  Plaintiff

18  testified that he was self employed in the wood cutting business and would sell it to anyone who

19  wanted it.  He had to stop in January, 2004 due to his first "attack" and pneumonia.  He tried to

20  continue cutting wood after that time, but was unable.  (Id. at 321.)  This job may have been so

21  sporadic that the ALJ could not properly accord it weight in his rejection of Hagar's opinion.  In

22  fact, Dr. Hagar at one point questioned whether plaintiff's being outdoors most of the time was

23  contributing to the worsening of his asthma due to a possible allergic catalyst outside.  (Tr. at

24  285.)

25          Although the ALJ gave some specific reasons for according Dr. Hagar's opinion

26  less weight, they were not legitimate.  The only other opinion in the record which was based on

7

1  an evaluation of plaintiff rather than his records was limited as admitted by Dr. Natali who did

2  not have sufficient contact with plaintiff to render a complete assessment.  Therefore, it is

3  necessary to remand for the ALJ to obtain a consulting opinion that is complete after sufficient

4  contact with plaintiff.  The ALJ should then redo his five step analysis in light of the further

5  developed record.

6      B.  Whether the ALJ Properly Evaluated Plaintiff's Ability to Perform Past Relevant

7  Work

8      Plaintiff contends that the ALJ erred in finding he could do his past relevant work

9  as casino dealer.  In particular, plaintiff objects to the ALJ's statement that "[t]here may be some

10  smoke involved in a casino but this should be no problem since the claimant is a smoker."  (Tr. at

11  22.)

12      Plaintiff bears the burden of proving he suffers from a physical or mental

13  impairment that makes him unable to perform "past relevant work."  Andrews v. Shalala, 53 F.3d

14  1035, 1040 (9th Cir.1995).  Plaintiff cannot merely show he is incapable of performing the

15  particular job he once did; he must prove he cannot return to the same type of work.  Villa v.

16  Heckler, 797 F.2d 794, 798 (9th Cir.1986).  In determining whether a disability applicant can

17  perform past work, the Commissioner may consider work as it was actually performed, or as it is

18  normally performed in the national economy.  The ALJ determines the demands of a past job and

19  compares the demands to current RFC.  Villa, 797 F.2d at 798.

20      It appears from the record that plaintiff has a long history of smoking, that he had

21  quit for a couple of years at the time of the hearing, but had started again around February, 2005.

22  (Id. at 322, 298.)  Whether or not plaintiff smokes is irrelevant to the determination.  He still

23  cannot do casino work as *all* physicians of record restricted plaintiff from a smoke filled

24  \\\\\

25  \\\\\

26  \\\\\

8

1   environment.  See discussion *supra*.  Plaintiff has met his burden in this regard.[4]

2          The Commissioner contends that the Dictionary of Occupation Titles lists

3   gambling dealer with no environmental restrictions other than noise.[5]  (Tr. at 81.)  This job is

4   listed at DOT 343.464.010.  Defendant also points out that many casinos now have smoke free

5   parlors and that in California non-tribal casinos are required to be smoke free.  The court's

6   limited research does not bear out this assertion.  Defendant cites

7   www.smokefreeworld.com/casino.shtml, which lists non-smoking casinos and casino rooms.

8   There are only two such casinos in California, and both of them are only partially smoke free.

9   There are eight such casinos in Nevada, most of which are only partially smoke free.  Another

10  website, www.no-smoke.org, lists only one non-tribal smoke free casino in California, and only

11  six non-tribal casinos in the United States which are smoke free.

12         Based on all of the evidence precluding plaintiff from a smoke filled environment,

13  on remand the ALJ shall reconsider his finding that plaintiff can do his past work as casino dealer

14  in a smoke free casino, and whether there are significant numbers of these jobs in the national

15  economy.

16  CONCLUSION

17         Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment or

18  Remand is GRANTED pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's

19

20         [4]  The undersigned is, of course, not finding that plaintiff can ignore his doctor's orders
    with impunity and still receive Social Security benefits.  However, that issue is not presented in
21  this case, and the undersigned expresses no opinion on it.

22         [5]  The United States Dept. of Labor, Employment & Training Admin., Dictionary of
    Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining
23  the skill level of a claimant's past work, and in evaluating whether the claimant is able to
    perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir.
24  1990).  The DOT classifies jobs by their exertional and skill requirements.  It is used by the SSA
    to classify jobs as skilled, unskilled, or semiskilled.  (Id.)  Each job is assigned a number
25  reflecting  how long it generally takes to learn the job, termed "specific vocational preparation"
    ("SVP") time.  (Id.)  The DOT is a primary source of reliable job information for the
26  Commissioner.  20 C.F.R. § 404.1566(d)(1).

1   Cross Motion for Summary Judgment is DENIED, and this matter is remanded for further

2   findings in accordance with this order.  The Clerk is directed to enter Judgment for plaintiff.

3   DATED: 03/07/08

                                                    /s/ Gregory G. Hollows

4                                                   _____

5                                                   GREGORY G. HOLLOWS
                                                    U.S. MAGISTRATE JUDGE

    GGH/076

6   Marshall1884.ss.wpd

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26